UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Randolph L. Chambers</u>

   v.                                             Civil No. 08-cv-442-JL

<u>Richard Gerry, Warden,</u>
<u>New Hampshire State Prison</u>

**REPORT AND RECOMMENDATION**

     Before the Court is Randolph Chambers' complaint (document no. 1) as well as other pleadings and documents filed in support of his action (document nos. 16, 19, 20 & 22 – 24).[1]  This action is brought pursuant to 42 U.S.C. § 1983, alleging that defendant Richard Gerry, the Warden of the New Hampshire State Prison ("NHSP"), as well as other NHSP employees, have violated Chambers' constitutional rights.  The matter is before me for

---

[1] Chambers' initial complaint (document no. 1), his motion for an addendum (document no. 19), motion for subpoena (document no. 20), motion to compel/injunction request (document no. 22), and motion to compel (document no. 23), will be considered, in the aggregate, to be the complaint in this matter for all purposes.  As explained in this Report and Recommendation, and in my simultaneously issued Order, Chambers' motion for a mandatory injunction (document no. 16), and Chambers' motion for a subpoena (document no. 24), raise separate claims unrelated to those presented in the complaint here, and each will be treated as a complaint filed in a separate action and docketed as such.

preliminary review to determine, among other things, whether or not this action states any claim upon which relief might be granted.  See 28 U.S.C. § 1915A; United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

### Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review.  LR 4.3(d)(2).  In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See id.  This review ensures that pro se pleadings are given fair and meaningful consideration.

### Background

Randolph Chambers is an inmate at the NHSP.  Chambers alleges that he was placed on Pending Administrative Review status at the prison on December 5, 2008.  As a result, he was transferred to the prison's Secured Housing Unit ("SHU").  On December 7, 2008, Chambers wrote to Sgt. Parent at his old unit and requested a list of the property that was taken when he was moved, as certain canteen items that he had purchased before the transfer were not given to him at SHU.  Chambers received a property list dated December 5, 2008, the date of his transfer. The only items not itemized on the list were "misc[ellaneous] food," "misc[ellaneous] mail," and "[misc]ellaneous photos." Chambers specifically attempted to get an itemized list of his food items so that he could retrieve them, but received neither the list nor his food.  As a result, he claims he lost between $35 and $95 dollars worth of canteen expenses.

On December 19, Chambers wrote to the Unit Manager at his old unit and asked for his property.  Sgt. Parent responded to Chambers, advising him that all of his property had been sent to SHU on December 19, 2008.

On January 28, 2009, Chambers had not yet received his property.  Instead, he received a 5-day notice advising him he had to arrange to mail out certain items of his property that were unauthorized in SHU within five days, or the property would be destroyed, including: 1) a television, 2) boots, 3) sweats, 4) sneakers, 5) a photo album, 6) personal paperwork, 7) unauthorized canteen items, and 8) a net bag.  On the day he received the 5-day notice, Chambers wrote to Officer Nahodil, who was in charge of property, and requested that he be given an itemized list of all of his unauthorized canteen items so that he could write an appeal.  Chambers also requested his personal paperwork and his TV, as he asserted that both were authorized in SHU.  Nahodil declined to give Chambers a list of unauthorized items, advising Chambers instead to specifically request what he wanted from his property.  On January 29, 2009, Nahodil advised Chambers that a television is not authorized property in SHU, and that his personal paperwork would not be forwarded to him.

Chambers has submitted a copy of PPD 9.02(J)(3)(e), the portion of the PPD relevant to his complaint.  The PPD states that when an inmate has an increase in his security status, his property will be taken and inventoried, and that property authorized in the inmate's new housing unit will be returned to the inmate.  The policy also states that the remaining property will be "returned for reissue under regular supply procedures," presumably upon a reduction in custody level.

The practice actually employed by prison officials, however, varies from the policy outlined in PPD 9.02(J)(3)(e), to the detriment, Chambers alleges, of his property rights.  In practice, Chambers agrees that an inmate's property is taken at the time a housing switch is made, at least partially inventoried, and the property that is allowable in the new housing unit is returned to the inmate.  As to the unauthorized property, however, the inmate, instead of having his property retained and stored by the prison, and returned to him later, receives a "5-day notice" regarding all of the unauthorized property.  This notice provides that the inmate has five days to supply an address, along with prepaid postage, to which the prison can send his property.  If the inmate fails to comply with

this notice within five days, the property is destroyed or otherwise disposed of.[2]

Chambers' complaint alleges that the failure to provide him with an itemized list of his canteen items, and the failure to provide him with his television and personal papers in SHU, give rise to constitutional violations of Chambers' Fourteenth Amendment rights to due process and equal protection and his Fourth Amendment right not to have his property unreasonably seized from him. Chambers further states that if these items, which he purchased at the prison canteen, are sent out of the prison or destroyed, he will be forced to repurchase them at his own expense when his custody level is reduced. Chambers alleges that this gives rise to illegal business practices as inmates are required to purchase items from the canteen more than once, and are not allowed to purchase items available at the canteen from another source.

---

[2] In an attempt to resolve this issue with the prison, Chambers contacted the New Hampshire Civil Liberties Union ("NHCLU"), which contacted prison officials about the discrepancy between PPD 9.02(J)(3)(e) and the actual treatment of inmate property. The prison acknowledged the conflict, and advised the NHCLU that they are in the process of revising the pertinent section of PPD 9.02 to conform to the existing practice described herein. I find that the future revision of this policy is immaterial to my preliminary review of this matter and I will not consider it at this time.

Discussion[3]

I.  Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law. See 42 U.S.C. § 1983[4]; Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-331 (1986)); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002). In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997). Because

---

[3] The claims as identified herein will be considered for all purposes to be the claims raised in the complaint. If Chambers disagrees with this identification of the claims, he must do so by objecting to this Report and Recommendation, or by properly moving to amend his complaint.

[4] 42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

7

Chambers' claims allege violations of federal constitutional law effected by state actors, his suit arises under § 1983.

## II. Property Claims

In order to state a Fourteenth Amendment due process claim for an improper deprivation of his property, Chambers must allege a constitutionally grounded liberty interest in that property. None of the property itself gives rise to a federally protected right, as an inmate has no right to have a television or to have food items in excess of what is necessary to provide him with adequate nourishment to live.  "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." Helling v. McKinney, 509 U.S. 25, 31 (1993) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).  The Eighth Amendment imposes duties on prison officials to ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.  See Farmer v. Brennan, 511 U.S. 825, 832–33 (1994); Helling, 509 U.S. at 31–32; Washington v. Harper, 494 U.S. 210, 225 (1990); Hudson v. Palmer, 468 U.S. 517, 526–527 (1984);  Estelle, 429 U.S. at 103.  Conditions of confinement which do not lead to deprivations of essential food, medical

care, or sanitation do not amount to an Eighth Amendment violation. See Williams v. McWilliams, 20 F.3d 465 (5th Cir. 1994) (citing Rhodes, 452 U.S. at 348). The fact that Chambers may be required to purchase these items again in the future, if he is returned to a security level where the items are authorized, is a simple claim of property loss occasioned by the failure of the prison officials to follow established policy.

Claims alleging the theft, damage, loss or other misappropriation of property are not actionable under 42 U.S.C. § 1983 where, as here, there is an adequate post-deprivation state remedy available. Hudson, 468 U.S. at 533; see N.H. Rev. Stat. Ann. §§ 541-B:9(II) & (IV), and 541-B:14 (providing a post-deprivation means of recouping property loss attributable to the state). Here, if Chambers does, in fact, suffer a financial loss due to the misappropriation or loss of his property by prison officials in violation of prison policy, Chambers may seek recompense through the State's Board of Claims. See id. Accordingly, I find that all of Chambers' claims alleging the loss of his recompensable property should be dismissed as not cognizable as a federal cause of action.[5]

---

[5]Chambers refers to an Equal Protction claim in his assertion of a deprivation of rights accruing to him under the

III. Fourth Amendment Claim

An inmate, due to the nature of incarceration, does not enjoy a Fourth amendment right to be protected from unreasonable seizures of personal effects in his jail cell.  See Soldal v. Cook County, 506 U.S. 56, 65 (1992) (citing Hudson, 468 U.S. at 528 n.8 (O'Connor, J., concurring) ("Prison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests," although the items seized may not necessarily be destroyed with impunity).  As to his personal paperwork, Chambers has failed to identify any reason why possessing it inside the prison, as opposed to mailing it to someone who can retain it for him outside of the prison walls, deprives him of any right that is enforceable in a prison context.  Prison officials advised Chambers that his paperwork was not authorized property at SHU.  It takes little imagination to understand that the removal of some personal property from an inmate's possession when an inmate is transferred to a higher security status, may serve a variety of legitimate institutional

---

Fourteenth Amendment.  Chambers provides no facts to support such a claim, or that would justify construing this complaint to allege such a claim.  Accordingly, I will not consider this action to contain a sufficiently raised equal protection claim to warrant further consideration.

interests, including, but not limited to, the deprivation of privileges as a punitive measure and space considerations in the new unit. I find that Chambers has failed to state a Fourth Amendment right that has been violated by the actions of prison officials, and I recommend dismissal of this claim.

IV. Retaliation

Chambers loosely asserts that the prison is improperly taking his property as an act of retaliation against him, although he does not specifically state why they are retaliating against him. Further, Chambers alleges no facts supporting any causal connection between the treatment of his property and any retaliatory intent by anyone at NHSP. Accordingly, I find that insufficient facts are stated to support this claim and I recommend it be dismissed.

V. Denial of Grievance Procedures

Chambers, due to the fact that none of his grievances are being answered, suspects that some officers working on first shift at the prison are failing to process his request slips and other forms. While there is no constitutional right to the existence of grievance procedures, see Lim v. Stanley, 2005 WL 1712202, *4 n.13 (D.N.H. 2005), the right to the use of

established administrative grievance procedures in a prison context is protected by the constitutional right to petition the government for a redress of grievances. See Hudson, 468 U.S. at 523 (1984); Sprouse v. Babcock, 870 F.2d 450, 452 (8th cir. 1989); Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir. 1988). I find that Chambers' charge alleging that he was denied access to grievance procedures is purely speculative. Even assuming the truth of Chambers' accusations, however, he has failed to name a proper defendant to the claim. The only defendant named to this action is NHSP Warden Richard Gerry who, Chambers states, is unaware of his complaints. No officers responsible for the breach of procedure amounting to a denial of access to the grievance system has been identified. Accordingly, I recommend dismissal of this claim.

VI. Excessive Force Claim

Chambers has attached an affidavit to his motion to compel (document no. 23). The affidavit recounts an argument between Chambers and four corrections officers where he claims that his face was pushed into a wall. This affidavit, which has been filed as part of another pleading, does not relate to any claim in this action and, if Chambers intends to bring an action

against any officer for excessive force, he must do so in a separate complaint. As this action does not contain any claim for excessive force, I will not consider those allegations further.

VII. <u>Claims to be Docketed as Separate Cases</u>

Chambers has filed a motion for an injunction regarding the lighting of the SHU unit during daytime hours (document no. 16). In addition, he has filed a motion complaining about the condition of the meals served to him (document no. 24). As the motions have nothing to do with Chambers' property claims, and were filed months after Chambers initiated this action, I find that each of them should have been filed under separate cover as the complaints in new actions and, accordingly, I will not consider these allegations as part of this action. I will instead direct the Clerk's Office, in an Order issued simultaneously with this Report and Recommendation, to docket each of these motions as the complaint a new case.

<u>Conclusion</u>

As I find that Chambers has failed to state any claim upon which relief might be granted, I recommend that this action be denied in its entirety. Any objections to this report and

recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

                                                _/s/ James R. Muirhead_
                                                James R. Muirhead
                                                United States Magistrate Judge

Date:     March 12, 2009

cc:       Randolph L. Chambers, pro se